## Case No. 2,337a.

CAMDEN & A. R. TRANSP. CO. v. The LOTTY.

[7 Betts, D. C. MS. 21.]

District Court, S. D. New York. Feb. 17, 1846.

ADMIRALTY JURISDICTION —WATERS—COLLISION— FAULT OF PILOT—VIS MAJOR.

[1. Admiralty has jurisdiction of a suit for damages caused by collision between vessels at a pier of the city of New York.]

[2. The fact that a vessel was moored by a licensed pilot, who brought her into port, is no defense to a suit for damages sustained by reason of a collision caused by the vessel breaking from her moorings.]

[3. The defense of vis major is unavailable in a suit for damages resulting from collision caused by a vessel breaking her fastenings in a heavy windstorm, where it appears that her master neglected to increase her fastenings for twelve hours after the beginning of the storm, and after it had become apparent that such a precaution was necessary.]

[In admiralty. Libel by the Camden & Amboy Railroad Transportation Company, owners of the steamboat Independence, against the Swedish bark Lottv (Eric G. Donham, claimant).]

BETTS, District Judge. At the moment this opinion is to be pronounced the court has learned the deplorable loss of the barque and her master and mate, in the recent tempest off our coast. Still it is necessary to render the decree demanded by the pleadings and proofs in the case.

In the afternoon of the 15th of December last, the barque, a Swedish vessel, arrived in this port and was moored by the pilot who brought her in, at pier No. 2, North river. She was secured fore and aft, by a ⅞ inch chain, and the great preponderance of evidence is, as was admitted by the counsel for the claimant and respondent, that she was not secured, in her position on that side of the harbor, and at that season of the year, according to the usage of the port, in the amount and sufficiency of her fastenings. An unusually heavy gale of wind from the northwest, set in early that evening and continued through the night, and at five o'clock the next morning, when the master and crew were taking measures to apply more fastenings further to secure her, the forward chain parted, and the barque was

borne round by the wind against the steamboat Independence, lying on the opposite side of the same pier, and was driven violently against the boat, doing a great deal of damage, before by the most active exertions she could be hauled off. This suit seeks a recompense for these damages.

The action has been contested essentially upon two points of objections in law: First, that this court has no jurisdiction of cases arising at the wharves and piers of the city; and, secondly, that the master and barque are exonerated from responsibility, she having been placed and left in that condition by the pilot who moored her.

1. The collision causing the damage was a maritime trespass committed upon tide waters, and as such within the jurisdiction of admiralty courts. [Manro v. Almeida] 10 Wheat. [23 U. S.] 473. And no distinction is taken in the authorities limiting such jurisdiction to waters not flowing into piers in a port. Laws Oleron, art. 14; 2 Pet. Adm. 313 [Moxon v. The Fanny, Case No. 9,895]; 2 Gall. 400 [De Lovio v. Boit, Case No. 3,776]; Bullock v. The Lamar [Id. 2,129]; 5 Law Rep. 200 [Hale v. Washington Ins. Co., Id. 5,916]; 2 Abb. Shipp. 99, note; Bee, 51 [Martins v. Ballard, Case No. 9,175.] Admiralty courts take cognizance of cases of collision within harbors and upon rivers where the tide ebbs and flows, although within the body of a country. 8 Law Rep. 275 [Bullock v. The Lamar, Case No. 2,129], Wayne, J. The doctrine has been declared in numerous cases in this court, and I am not aware of any accredited decision in the United States to the contrary. MSS. vol. 5, 77; Id. 8, p. 6 [Cases Nos. 17,242a and 1,672], 6 How. I shall accordingly pronounce in favor of the jurisdiction in this case.

2. There is no foundation for the idea that the authority or responsibility of the master or owners of the vessel was any way lessened by the act of the pilot in mooring her. That of the owners would have remained entire, had the collision happened when the vessel was under way under the direction of the master, although the command of the master, and his personal responsibility, may perhaps be suspended for the time the pilot has charge. Abb. Shipp. 161, note; Jac. Sea Laws, 125; Curt. Merch. Seam. 195. 196, notes; [Jackson v. Winchester], 4 Dall. [4 U. S.] 206; 9 Wend. 1. But after the vessel was brought safely into port, the authority and responsibility of the master were fully restored, and the acts of the pilot in arranging or fixing her moorings must be regarded as directed or adopted by the master. So upon the authorities, it would whilst the pilot is navigating the vessel, unless the law compelled the master to take a pilot. Curt. Merch. Seam. 196, note. I think, accordingly, it is no matter of defence in this case that the barque was moored under the directions of the pilot. No law or port regulation has been shown compelling the master to submit to the directions of the pilot in respect to the fastenings of his vessel, and the owners and master consequently are responsible for damages occasioned through negligence or want of due precaution in this respect.

Although in the course of the hearing it was conceded on the part of the claimant and respondent that the evidence had established the fact that the fastenings of the barque were insufficient and not according to the custom of the port, and the court accordingly stopped the libellants giving further proof to that point, yet on the argument it was urged that the damage was caused by vis major, a sudden and extraordinary tempest, which in addition to the necessary strain and pressure upon the vessel, had raised masses of boards from the dock, and driven them against the rigging, thereby forming a bulwark which exposed her still more to the violence of the gale, and caused her fastenings to give way. It is sufficient in reply to that branch of the defence, to advert to the proof that the gale commenced early the preceding evening and continued throughout the night with increasing violence, and accordingly the master was warned in due season of the necessity of precaution in respect to his ship. He neglected increasing her fastenings for twelve hours, leaving her in almost a hurricane with only a single and small chain to secure her. Had the disaster occurred in a sudden squall striking the vessel without premonition the defence would be countenanced by a more urgent equity to favor it, but it was negligence to trust his vessel through the night under a tempestuous wind, the wind straining her off the wharf secured with no more than a single and slender chain, which would have been the slightest degree of fastening to be used in the most sheltered position and calmest of weather.

The libellant seeks also to sustain their action against the respondent upon his alleged promise to pay the damages. I do not discuss the question whether such a promise could be enforced in this court, because in my judgment, there is a failure of proof to establish it. He is a foreigner speaking English very imperfectly, and the alleged promise is what was understood by the captain and some of the crew of the steamboat to have been said by the respondent in reply to a statement to him by the captain of the steamboat. If it be admitted the conversation was under circumstances in which the respondent might be regarded as acting with reasonable composure of mind and so as to be bound by his declarations, I think the testimony entirely too vague to show that he really comprehended what had been said to him, or that his answer was properly understood.

The decree will be against the vessel for the expenses of repairing the steamboat,

no allowance being made for the loss of her trip, and it must be referred to a commissioner to estimate and report these damages.

[For subsequent proceedings in this case, see The Lotty, Case No. 8,524.]